# 𝔏𝔞𝔴 𝔞𝔫𝔡 𝔈𝔮𝔲𝔦𝔱𝔶

### IN THE

# SUPREME COURT

### OF THE

# STATE OF NEW-YORK.

---

## CARNRICK *vs.* MYERS.

A sale of property upon execution, made after sunset, is void, and the proceedings of the sheriff are thereby rendered void *ab initio.*

Where a party, whose property was levied on by execution, objected to the sale, on the ground that the property was exempt from execution, but he afterwards turned out the property to the sheriff, to be sold at a future day; *Held* that this was nothing more than a claim of exemption, in order to gain time; that the sheriff, in subsequently selling the property, acted under a claim of authority given by law, and not under an authority given by the party; and that an abuse of his authority, by the sheriff, made him a trespasser *ab initio.*

THIS was an appeal from a judgment rendered on the report of a referee, in favor of the plaintiff, for $63,85.

*R. A. Parmenter,* for the plaintiff.

*J. E. Taylor,* for the defendant.

Carnrick *v.* Myers.

*By the Court,* PARKER, J.   This action was brought to re-cover the value of a pair of horses, sold by the defendant, a deputy sheriff, to satisfy executions in his hands.   It appears there were three executions in the hands of the defendant.   The first was against Carnrick (the plaintiff) and Austin and Barn-hart, and was delivered to the sheriff on the 26th day of Octo-ber, 1848.   The second was against Winsor, Carnrick and Austin, and was delivered on the 12th day of September, 1848.   The third was against Carnrick, and Austin and Greenman, and was delivered on the 28th of December, 1848.   The property in question did not belong to the plaintiff until January, 1849, and was levied on under the last execution, as appears by an indorsement of the defendant, on the 12th day of February, 1849.   The time for levying under the first two executions had expired before the plaintiff purchased the horses.   In June, 1850, the defendant offered the property for sale, but after one or two bids, the plaintiff objecting to the sale, on the ground that the horses were exempt, the sale was postponed, and an arrangement was made, by which the plaintiff turned out the horses to be sold at a future day, in case the execution should not in the meantime be paid.   On the 19th of July, 1849, the plaintiff paid to the attorneys who issued the executions the amount of the two youngest executions, except the sheriff's fees, leaving the whole of the oldest execution, and the sheriff's fees on the last two executions, unpaid.

On the 20th of December, 1850, the horses were sold by the defendant, the sale being made after sundown.

The sale was undoubtedly void.   The statute (2 *R. S.* 466, 3*d ed.*) requires every sale by virtue of an execution to be between the hours of nine A. M. and the setting of the sun.

I think the referee was right in holding that the effect of this was that the proceedings of the sheriff were void *ab initio.* The levy was made by virtue of the execution last received by the sheriff.   It was not until four months afterwards, when the defendant was about to sell the property, and after the plaintiff had objected to the sale, on the ground that the horses were ex-empt, that the plaintiff " turned out the property," as the wit-

ness calls it, to the sheriff. It was in fact nothing more than waiving a claim of exemption, to gain time; that is, it was giving a consent to what the defendant had already done and had a right to do, under the last execution. I think the defendant was acting under a claim of authority given by law, and not under authority given by the party. Under such circumstances the abuse by the defendant would make him a trespasser *ab initio.* (*Dumont* v. *Smith,* 4 *Denio,* 319. *Allen* v. *Crofoot,* 5 *Wend.* 508, 509.)

I think the referee was right in deciding that it was not proved that the property was exempt from execution. The *onus probandi* on that question rested on the plaintiff.

In the view I have taken, it is unnecessary to inquire whether the defendant had a right to proceed and sell after the judgments and executions were all paid except sheriff's fees.

It was shown on the trial that on the 27th of July, 1850, the plaintiff executed a mortgage on the horses to Benjamin Barker. But I do not see how that can afford any defense to the defendant for the wrongful act committed by him. The plaintiff had a right to retain the possession of the property until he was legally dispossessed by the mortgagee.

The judgment rendered on the report of the referee must be affirmed.

[ALBANY GENERAL TERM, May 3, 1852. *Parker, Wright* and *Harris,* Justices.]