## HACKLEY v. DRAPER, appellant.

4T&0614
53ad292

*Receiver — fraudulent sale by void, even as to innocent purchasers — Action maintainable to avoid sale — Judgment creditor proper party to action to set aside — Variance — facts not averred not provable — Demurrer — does not lie to part of complaint — Action — against receiver without leave valid until court interferes.*

A receiver of an insolvent corporation appointed in an action brought by plaintiff, one of its creditors, held as an asset of such corporation a judgment of upward of $50,000 against D. D. at the time the judgment was obtained, was financially embarrassed, but afterward made offers for the settlement of the judgment, at various times, of $25,000, $20,000 and $10,000 to receivers of the corporation, preceding the one first mentioned. Of these offers, particularly the last one, this receiver was informed. He, however, without the knowledge or consent of the judgment creditor, with whom he had agreed to consult in reference to collecting the judgment, and whose directions within the limits of his duty he had agreed to follow, procured an order authorizing him to sell the judgment at public or private sale, in his discretion, and shortly after sold the same to one acting in behalf of D. for $2,500. It was shown that at the time D. was receiving a salary of $3,000 per year; had within three years before the sale received $15,000 from other sources, and two and a half years afterward died worth $100,000, and there was no evidence of debts against his estate or when he acquired it. *Held,* (1) that it was not necessary to establish fraud against all the parties to entitle plaintiff to a decree setting aside the sale, but against the receiver only; (2) that the presumption was that D. was solvent at the time of the sale; (3) that the sale of the judgment at private sale was fraudulent and utterly void; (4) that such sale was not aided in any respect by the order of the court.

*Held,* also, (1) that the remedy was not by motion only, but also by action (*Tiernan* v. *Wilson,* 6 Johns. Ch. 411); (2) that action was necessary as (*a*) in a motion jurisdiction could not be obtained over D. or over the person who obtained the transfer of judgment, for the reason that the sale being void, such person was not legally a purchaser, and as (*b*) parol evidence was essential to the invalidity of the transfer; and (3) that the judgment creditor, being the *cestui que trust* of the judgment, was the proper party to bring the action.

Evidence of facts not averred in the pleadings *held* incompetent.

A complaint set forth that a sale by a receiver was fraudulent as to plaintiff. An amendment was allowed setting up as additional grounds upon which the sale was illegal, that the order of court allowing the sale had been improperly obtained and that the sale was in violation of the statute. *Held,* that a demurrer would not lie to the amendment only. A demurrer cannot be made to specific portions of a complaint, but only to the whole.

Although the general rule is that a party must apply to the court for leave before he sues a receiver, an action brought without leave is regular until the court interferes, and a judgment thereon will be valid.

APPEAL from a judgment rendered at special term in favor of plaintiff. The action was brought in Jefferson county by Andrew J. Hackley and Sarah Hungerford, administratrix of the estate of Marcus Hungerford, deceased, against Simeon Draper, John Steward and Robert Yelverton, to set aside the sale of a judgment, and for other relief. During the pendency of the action Simeon Draper died, and John H. Draper and Henry Draper, the executors under his last will, were substituted as defendants.

Some time previous to 1853 the city of Auburn subscribed for the stock of the Lake Ontario, Auburn and New York Railroad Company the amount of $100,000, and issued its bonds for that sum. These bonds were purchased by Simeon Draper for $106,000. Only part of this sum was paid, and after an abortive attempt to settle the balance due a suit was brought by the city against Simeon Draper therefor, and a judgment recovered for .$65,000. In 1855 plaintiffs brought action against the railroad company above named for an indebtedness due them, and upon their application a receiver of the property of the company was appointed. By some arrangement, not material to the case, the judgment against Draper was assigned to the receiver, and became a portion of the assets of the railroad company. The receivership was continued and successive receivers appointed down to the appointment of the defendant Yelverton. Negotiations were entered into during the years subsequent to the appointment of the first receiver on behalf of Simeon Draper for the purchase or settlement of the judgment, and sundry offers made to the several receivers to that end. The result of the negotiations was that in 1864, upon the application of the receiver, Yelverton, an order was granted by a justice of the supreme court directing the receiver to sell the judgment at public or private sale in his discretion, and shortly after this he sold and transferred the judgment to defendant Steward, who acted in behalf of Simeon Draper. Other material facts appear in the opinion of Mr. Justice MULLIN adopted by the court at general term.

The complaint asked that the sale of the judgment by the receiver be set aside as fraudulent, and that the receiver be removed.

Upon the trial after the plaintiff's evidence was concluded, defendant moved for a nonsuit upon the grounds stated in the opinion, upon that motion, hereafter given. Subsequent to the decision of that motion, upon application to the court, plaintiff was allowed to amend the complaint in certain particulars. To the amendments made, defendants demurred upon grounds set forth in the opinion hereafter given upon the argument of the demurrer.

The judge, before whom the action was tried, found in favor of plaintiff and gave judgment as asked in the complaint. From this judgment defendants Draper appealed.

*Samuel J. Glassey* and *John A. Foster*, for appellants. Plaintiffs cannot maintain this action. Their remedy was by motion in original suit. *Groff* v. *Jones*, 6 Wend. 522 ; *Mulks* v. *Allen*, 12 id. 253 ; *Wright* v. *Hooker*, 4 Cow. 415 ; *Lowber* v. *Mayor of New York*, 26 Barb. 262 ; *Chappel* v. *Chappel*, 12 N. Y. 215 ; *Requa* v. *Rea*, 2 Paige, 339; *Brown* v. *Frost*, 10 id. 243 ; *Nicholl* v. *Nicholl*, 8 id. 350; *American Ins. Co.* v. *Oakley*, 9 id. 259. Plaintiff should have moved for removal of receiver and appointment of new one, who could have moved to set sale aside. *Osgood* v. *Laytin*, 3 Keyes, 522 ; *Newland* v. *Champeon*, 1 Ves. 105 ; *Utterson* v. *Mair*, 2 Ves. Jr. 95; *Bank of Utica* v. *City of Utica*, 4 Paige, 399; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528 ; *Mitchell* v. *Oakley*, 7 Paige, 68, and cases cited ; *Libby* v. *Rosekrans*, 55 Barb. 203, 215, 219 ; *McCotter* v. *Jay*, 30 N. Y. 80 ; *Gould* v. *Mortimer*, 26 How. 167. The action of the receiver in selling the judgment in obedience to the order of the court was proper. *Verplanck* v. *Merc. Ins Co.*, 2 Paige, 452 ; *Davis* v. *Mayor of New York*, 1 Duer, 492 ; *People* v. *Sturtevant*, 9 N. Y. 266. The order for sale cannot be assailed in a collateral proceeding. *People* v. *Sturtevant, supra ; Embury* v. *Conner*, 3 N. Y. 522; *Bangs* v. *Dunckinfield*, 18 id. 595; *Schaettler* v. *Gardiner*, 47 id. 404; *Voorhies* v. *Bank of United States*, 10 Pet. 449 ; *Cooke* v. *Halsey*, 16 id. 71; *Kemp* v. *Kennedy*, 5 Cranch, 173; *Ex parte Watkins*, 3 Pet. 193; *Guynon* v. *Astor*, 2 How. (U. S.) 319; *Harvey* v. *Tyler*, 2 Wall. 328; *Hopkins* v. *Lee*, 6 Wheat. 109; *Parker* v. *Kane*, 22 How. (U. S.) 1. The decree to sell at private sale was right. *Verplanck* v. *Merchants' Ins. Co., supra; Matter of Croton Ins. Co.*, 3 Barb. Ch. 642 ; *Chautauque Bank* v. *White*, 6 Barb 597.

*Chas. Mason*, for respondent.

E. DARWIN SMITH, J.   Upon the findings of fact of the learned judge who tried. this cause at special term, which are fully warranted by the evidence, we think the judgment rendered by him should be affirmed, upon the opinion delivered by him on the motion for a nonsuit and on the argument of the demurrer to the complaint.

The decision upon the latter opinion having been affirmed by this court upon appeal at general term, virtually decided, we think, the law of the case in favor of the plaintiff.

In the points of the respondent's counsel it is stated that the case is not correct and that a certain order of the court at special term is erroneously inserted in the printed case, and this allegation is denied in letters by the appellant's counsel addressed to us out of court.

These points and the letters of the counsel we cannot in any manner regard.   Cases must be decided as they are heard upon the cases submitted to us on the argument.

We have repeatedly held that if there is any error in the printed case served it must be corrected by proper application to the court at special term before the case is brought on for argument.

The judgment must be affirmed, with costs.

[The following is the opinion delivered upon the motion for a nonsuit referred to above.]

MULLIN, J.   The plaintiffs having rested, the counsel for the defendants Draper moves for a nonsuit on the ground:

I. That the only ground set forth in the complaint on which it is sought to set aside the sale of the judgment by the receiver is fraud; and the fraud charged is not proved.

II. That the plaintiff is not entitled to relief, on the grounds taken on the argument of the motion for a nonsuit, to wit: That the order authorizing the sale was obtained *ex parte*, and without notice to the plaintiffs or their attorneys ; and the sale was made privately, whereas it ought to have been at public auction; because no such matters are stated in the complaint, and, if they were, they would not entitle the plaintiffs to relief, their remedy being by motion to set aside the sale, and not by action.

I. The first inquiry is: Was the sale of the judgment by the

receiver fraudulent? If it was, and the plaintiffs have been injured by it, they are entitled to relief. The fraud, if any, consists in the sale of a judgment against Simeon Draper in favor of the city of Auburn, and which had been transferred to, and was held by, the receiver for the benefit of the plaintiffs and another person, who were the only creditors of the Lake Ontario, Auburn and New York Railroad Company for $69,578.36, with interest from January 5, 1857, for the sum of $2,500.

The facts bearing on the question are, in substance, as follows:

At some time prior to the commencement of this action, the plaintiff Hackley obtained the title to certain premises on Chambers street, in the city of New York, in which Simeon Draper had an interest estimated at $20,000, and this interest was transferred to said Hackley, upon the understanding that that sum should be credited on the said judgment. This left some $49,000, besides several years' interest, remaining unpaid on the judgment.

There had been several receivers of the property of the said railroad company before the appointment of Yelverton, and to some one or more of them Draper offered, at one time, $25,000, at another $20,000, and at another $10,000, which was the last offer mentioned by the witnesses.

The defendant Yelverton was appointed receiver at the request of the plaintiffs or their counsel, with the understanding and agreement that he would, in endeavoring to collect said judgment, consult with, and as far as his duty would permit, follow the directions of said plaintiffs. He was informed of the offers made by Draper to compromise said judgment debt, and particularly of the offer to pay therefor $10,000. Hackley resided in the city of New York, as did the said Yelverton; they were well acquainted and frequently met. Hungerford was also well acquainted with him, and occasionally met him in New York. Mr. Bagley and Mr. Dorwin, who acted as counsel for the plaintiffs, saw him occasionally before the sale of said judgment and in reference thereto, as did Mr. Blish, who was a brother-in-law of Hackley, and, as creditor of said Hackley and Hungerford, was interested in the collection of said judgment.

The said Yelverton, without consulting with said Hackley and Hungerford, or either of them, or with their or either of their counsel, and without their knowledge or consent, made application to and obtained the order of the special term of the supreme court,

authorizing him, as receiver, to sell said judgment at public or private sale, in his discretion, upon such terms as he should deem best.    This order was entered in January, 1864.

On the 20th of January, 1864, the said receiver sold and assigned said judgment to John Steward, Jr., for the sum of $2,500, at private sale.

For six years prior to January, 1865, Simeon Draper had been one of the commissioners of charities in the city of New York, for which he was paid a salary of $3,000 per annum.

The firm of which Simeon Draper and his son, the defendant in this action, were members, was engaged in the business of selling goods at auction on commission, and received from the government, between May, 1861, and January, 1863, over $30,000 for commissions on sales made for the United States by the direction of the marshal for the southern district of New York.

In November, 1866, said Simeon Draper died, and his executors filed in the office of the surrogate of the city and county of New York an inventory of property belonging to his estate of the value of $100,000.

We find, then, Draper, some few years before the sale of the judgment, able to pay $20,000 upon it, and he had transferred, besides that amount, securities to some amount, but how much does not appear, to the city of Auburn, which were intended to apply on said judgment, but were not so applied.    He was in receipt of an annual salary of $3,000, and within three years before the sale had received presumptively half of the receipts of his firm as his share, which was $15,000, and some two and a half years afterward he died, leaving an estate of $100,000.

In the absence of all proof of debts against his estate, or of the time within which he earned the estate he left, it is a reasonable inference that at the time of the sale of the judgment he was solvent — that is, able to pay his debts, of which the judgment in question was one.

The receiver was guilty of a gross breach of faith toward those entitled to share in the avails of the judgment.    He knew they considered it worth more than $10,000, as they had refused to receive that sum; and yet, without consultation with them, without even giving them an opportunity to buy it themselves, he sold it for one-quarter of the lowest sum which the debtor himself had offered.

What may be shown in reference to Draper's condition by the defense I cannot contemplate. The question stands now on the plaintiff's proof alone. It may be Draper was in truth insolvent, and the amount received was all that, or more than, could be collected on the judgment. Yet the breach of faith, the utter disregard of duty on the part of the receiver, will remain. His conduct was grossly fraudulent.

But there is no evidence before me that Steward or Draper were parties to the fraud of the receiver. They knew the amount for which the judgment was sold, but they had the right to acquire it for the smallest sum at which it would be sold, provided they resorted to no unfair practices to obtain it. If, then, it is necessary for the plaintiffs to establish a fraudulent combination between these persons and the receiver, the remedy on the ground of fraud must fail. It is not, however, necessary to establish fraud against all these parties, or against any but the receiver, in order to entitle the plaintiff to a decree setting aside the sale.

In *Tiernan* v. *Wilson*, 6 Johns. Ch. 411, the sheriff of Alleghany sold the undivided half of 445 acres of land, owned by the plaintiff, on a judgment against him of $1,025, for $13, and gave to the purchaser a deed of the same. After tenders of the amount bid, and an offer to pay a much larger sum to avoid litigation, the plaintiff filed his bill to set aside the sale as fraudulent. Miller, the purchaser, directed the sheriff to convey to one Gale, who allowed the bill to be taken as confessed. Miller denied all fraud, as did the deputy-sheriff.

The chancellor held that fraud was neither alleged nor proved against Gale, but as Miller, his agent, knew that the property was worth very much more than was bid, he, Gale, was not entitled to protection. He also held that Miller was not chargeable with fraud, as he had done no more than every person attending the sale had the right to do; but because of the abuse of trust by the sheriff in selling so large an amount of property for so trifling a sum, the sale was set aside as fraudulent in law. The chancellor says though there was no actual corruption on his part, yet such a gross act of negligence and abuse of trust must be attended with the payment of costs. The sale was accordingly set aside with costs, to be paid by the sheriff. See *Stead's Exrs.* v. *Crounse,* 4 Cranch, 403.

I am unable to perceive any distinction between the case of *Tiernan* v. *Wilson, supra,* and the one before me. The sheriff and the

receiver are charged with substantially the same duties in regard to the sale of property. If it was an abuse of trust so flagrant as to require the sale of the land to be set aside, the sale of the judgment must be set aside on the same ground. Steward was an acquaintance of Draper; he had the means of knowing his circumstances. He knew Yelverton was selling as receiver, and that the amount bid was but a fraction of the amount due on the judgment. He did not buy for himself, but for Draper or his wife; and if for the wife, she is chargeable with knowledge of what was known to her husband or Steward.

In the absence of any evidence of insolvency, the presumption is that men are solvent and able to pay their debts. The presumption must be acted upon until it is overcome by proof. *Potter* v. *Merchants' Bank of Albany*, 28 N. Y. 641; *Walrod* v. *Ball*, 9 Barb. 271.

As the state of facts may be entirely changed by the evidence on the part of the defense on this branch of the case, I will not discuss it further; and, indeed, all I intend to decide now is, that on the plaintiffs' proof I cannot say that the sale was not fraudulent and void as to the plaintiffs.

*Second.* The second ground of recovery insisted upon by the plaintiffs is, that the order of the special term to sell the judgment was void, being without notice to the plaintiffs.

The order does not recite, nor is any evidence given before me, whether notice of the motion for leave to sell was or was not given. The receiver is entitled to the benefit of the presumption that he did whatever the law and the practice of the court required him to do in the premises, and it devolves on the party alleging a neglect of duty in this respect to prove it.

I will reserve the further consideration of this question until the proofs are all in, my present impressions being that if this was the only ground of recovery in the case, I should not deem it sufficient. I state my impression on this question now, that counsel may, if they consider it important, examine it more fully before the final hearing.

*Third.* The third ground of recovery is, that the sale of the judgment at private sale was in violation of the statute regulating sales by receivers of insolvent corporations, of whom the defendant Yelverton was one.

The question whether the plaintiff can avail himself of this

ground of recovery in this case, not having set it out in his pleadings, I will examine hereafter, as that question becomes important only in the event that the irregularity in the sale would be available to the plaintiff if it was properly pleaded.

Section 68, article 3, title 4, chapter 8, part 3 of the Revised Statutes (2 R. S. 469), declares that receivers of insolvent corporations shall have the same power and authority conferred by law upon trustees of the estates of insolvent debtors. By 2 R. S. 41, 42, section 7, subdivision 4, the trustees of insolvent debtors' estates are empowered to sell at public auction all the estate, real and personal, vested in them, after giving at least fourteen days' notice of the time and place of sale, and publishing the same for two weeks in a newspaper printed in the county where the sale shall be made. By the 9th subdivision of the same section they are authorized, upon the order of the officer appointing them, to compound with any person indebted to the insolvent, and thereupon to discharge the demands against such person.

A receiver is an officer of the court bound to obey its orders in regard to the management and care of property placed in his hands. But when the legislature has by law prescribed his duties and the manner of discharging them, the court has no power to release him from complying with the statute, or to require him to perform his duty in any other manner. When, therefore, he is required to sell the trust property at public auction upon notice of fourteen or any other number of days or weeks, he must sell in that manner and upon such notice, or his sale will be irregular and void, not voidable merely. The statute provides that sales of property on execution shall be at public auction after a notice of six weeks in case of the sale of real estate, and of six days in case of the sale of personal property; the sale must be between sunrise and sunset, and, when personal property is sold, it must be present and pointed out, so that it can be distinguished from other property of the same kind.

In *Olcott* v. *Robinson*, 20 Barb. 148, a sale was declared void because the notice was not published in conformity to the statute, and the owner was held entitled to recover in ejectment. The judgment in this case was reversed by the court of appeals, in 21 N. Y. 150, on the ground that the publication of notice was in compliance with the statute. No doubt is expressed as to the correctness of the ruling in the court below, if the notice had been defective.

In *Carnrick* v. *Myers*, 14 Barb. 9, the sheriff sold personal property after sunset, and the court held the sale was void, and that the officer was a trespasser *ab initio*.

In *Warring* v. *Loomis*, 4 Barb. 484, thirteen sheep were sold out of a larger number without separation until after the sale. The owner sued for the sheep, and the court held the sale void, and the plaintiff recovered. *Sheldon* v. *Soper*, 14 Johns. 352, is to the same effect.

In *Cresson* v. *Stout*, 17 Johns. 116, there was a sale of both real and personal property together, some six miles from where the property was. The sale was held void, and the owner recovered for the unlawful taking.

These cases, and numerous others which might be cited, present different applications of the general principle, which has never been departed from — that where the property of a man is to be taken from him and transferred to another by a public officer acting under authority of law, by which the mode of executing the power is prescribed, he must conform to it, or his act will be void. *Cleveland* v. *Boerum*, 27 Barb. 252; *Romaine* v. *McMillen*, 5 How. 318; *Carpenter* v. *Stilwell*, 11 N. Y. 61; *Wood* v. *Colvin*, 2 Hill, 566; *Cameron* v. *Irwin*, 5 id. 272; *Deyo* v. *Van Valkenburgh*, id. 246; *Swan* v. *Saddlemire*, 8 Wend. 676; *Delaplaine* v. *Hitchcock*, 6 Hill, 14; *Carter* v. *Simpson*, 7 Johns. 535.

There can be no distinction between a sheriff and a receiver in respect to the manner of making sales of property, and certainly there can be no less mischief resulting from a violation of duty by the one than the other. Every consideration which induces the courts to hold the sheriff and his officers to a strict compliance with the statute regulating the manner of selling property, applies in all its force to a receiver. I entertain no doubt but that the sale of the judgment by Yelverton at private sale was utterly void, and it was not aided in any respect by the order of the court. Yelverton would be entitled to the same presumption of the proper and regular discharge of duty as to the sale as was made in regard to giving notice of the application for the order to sell, were it not that Steward testifies to the manner he acquired the assignment, and does away with any presumption that the sale was at public auction. It is quite certain that it was the result of a private arrangement.

Had the transaction taken the form of a compromise of the indebtedness between the receiver and Draper, it is probable that

the rights of the plaintiff might have been barred; but it was a sale, and not a compromise. Steward took an assignment, and himself discharged the debt. The transaction must be upheld, if upheld at all, as a sale of the judgment; and that it cannot be upheld on that ground is to me established conclusively by the authorities.

Two other questions remain to be considered, and these are, first, whether, if it be true that the sale was void, either for fraud or for not having been made in conformity to the statute, the remedy is by motion, and not by suit; and, second, whether, if by suit, the plaintiff can avail himself of the irregularity in the sale, not having set it out in his complaint.

*First.* As to whether the only remedy is by motion, it seems to me to be disposed of by the case of *Tiernan* v. *Wilson, supra.* In that case the injured party proceeded in equity, and plaintiff had relief.

Again, when fraud is the ground of relief, a court of equity has unquestionable jurisdiction. Chancery is not deprived of jurisdiction because courts of law assume to grant relief against fraud on motion. There is no doubt but that the special term might have vacated the sale if it had, or could have, obtained jurisdiction of the parties on a motion. A sale of land was set aside on motion as fraudulent against a subsequent incumbrance when the value of the property greatly exceeded the amount bid. The judge who decided the motion said it was not necessary to send them to equity. *Groff* v. *Jones,* 6 Wend. 522. In that case the court held the proceedings regular, but in bad faith.

The chancellor decided in *Brown* v. *Frost,* 10 Paige, 243, that an original bill in chancery could not be filed by a party to a foreclosure suit to set aside a master's sale when relief could be had by a summary application to the court in the foreclosure suit.

The court on motion has set aside a sale by a master on decree in foreclosure when by his negligence the property had brought much less than its value. *Requa* v. *Rea,* 2 Paige, 339.

In *Collier* v. *Whipple,* 13 Wend. 224, the master's sale on foreclosure proceedings was set aside because parties interested were prevented from attending the sale by reason of having been misled as to the time of sale by the master.

In *Nicholl* v. *Nicholl,* 8 Paige, 349, a bill was filed to set aside a master's sale because the master had not filed security before assum-

ing to act as master. The chancellor sustained a demurrer to the bill, on the ground, among others, that if the neglect to file security vitiated the sale, it should have been taken advantage of by motion in the foreclosure suit.

I followed these cases in *Gould* v. *Mortimer*, 26 How. 167, holding that the plaintiff in that case — who was owner of the equity of redemption by purchase subject to a mortgage which had been foreclosed by action; but the plaintiff was not made a party, because his deed was not on record — could not maintain an action to set aside the sale, but must resort to a motion in the foreclosure suit.

The reason for not permitting the injured party to bring a new action in order to obtain relief is thus stated by the chancellor in *Brown* v. *Frost, supra*. The decree in that (the foreclosure suit) is conclusive upon the rights of the parties, and cannot be opened or disturbed in this collateral way. I am also satisfied that an original bill in chancery cannot be sustained by a party to a foreclosure suit to impeach or set aside the proceedings on the master's sale under the decree, where there was nothing which could have prevented an application to the court in that suit for a resale by those who were interested in the premises. If the master sells at an improper time or in such manner as to prevent a fair competition, or if for any other cause it would be inequitable to permit the sale to stand, the proper remedy is by a summary application to the court in the suit in which the decree was made for a resale of the premises upon such terms as may be just, so as to protect the rights of the purchaser, as well as the rights of the parties interested.

The cases cited were cases of foreclosure, but no one will claim that the reasons for compelling a party to seek relief by motion instead of by action does not apply to all other cases in which parties' rights are injuriously affected by irregular sales by officers in judicial proceedings. It will be perceived that all the cases cited and all the cases enumerated by the chancellor in which parties must seek relief by motion are cases in which the proceedings of the officer conducting them are voidable merely, and not void. I do not find a case in which it has been held that an action will not lie to set a sale aside when it is void, and not voidable merely.

If an action will not lie when a sale is void, why permit the owner of land sold, without complying with the provisions of the statutes as to notice and the time and manner of sale, to maintain

ejectment? Why permit the owner of personal property to recover it in an action of trover or trespass when the officer has sold after sunset, or when the property was not present or not separated from other property of the same sort? Why not in all these cases compel the party to seek relief by motion? It is because his title has never been divested, and therefore the purchaser has not acquired any title, and his remedy by action is perfect.

When a defendant in an execution has satisfied it, the sale, however regularly conducted, is void. The power to sell is gone; and the purchase, though made in the best of faith, is void. As to the distinction between void and voidable proceedings, see the opinion of WOODWORTH, J., in *Woodcock* v. *Bennet*, 1 Cow. 711.

But, again, a party is compelled to seek relief by motion only when, according to the practice of the court, he is entitled to make it, and when the court has jurisdiction over the other parties to be affected by the motion, so as to enable it to entertain it and grant the relief prayed for.

There is no doubt of the power of the court over the receiver and over the property, or that the plaintiffs had such an interest in the property as would enable them to invoke the aid of the court to protect it. But over Steward and Draper it had no jurisdiction, unless it acquired it by Steward's becoming the purchaser for the benefit of Draper.

It was held in *Requa* v. *Rea*, 2 Paige, 339, that when a person becomes a purchaser under a decree, he submits himself to the jurisdiction of the court in that suit as to all matters connected with the sale or relating to him in the character of purchaser.

As there never was a sale, Steward was never a purchaser. He was and is, as between himself and the court and those interested in the property, a wrong-doer. He acquired no more title to it than if he had stolen it or taken it from the custody of the receiver by force. Such a party cannot be subjected to the jurisdiction of the court by service of a notice of motion. He may be punished as for contempt, as may be every person unlawfully interfering with persons or property under the protection of the court. But Steward was in no just sense a party to a sale of the property so as to make him liable to be affected by the order of the court on a motion.

The defendant's counsel insists that if the sale and assignment of the judgment is, as it is claimed to be, utterly void, it is not a

cloud on title, and hence an action to set it aside is unnecessary. If the invalidity appeared on the face of the transfer, that would prevent the transfer from being a cloud; but it cannot be ascertained without parol proof of the neglect to give notice and to sell at public auction. Of these omissions there is no record, nor are there any means of ascertaining without evidence whether the statute regulating the sale has or has not been complied with. It is a case then in which an action could and should be brought to set aside the sale.

The plaintiffs are the only parties to sue, being the *cestuis que trust* of the judgment. The receiver, as trustee, having proved himself unfit longer to discharge the duties, and being himself the cause of the necessity of instituting proceedings to protect the property, these proceedings must be instituted by the plaintiffs, or the wrong go unredressed.

The receiver being a trustee of the property in question, that trust attaches to it, in whose hands soever it is found; and I can perceive no reason why a suit may not be maintained by the *cestuis que trust* to compel the appropriation of the judgment or its avails to the payment of the plaintiffs' debt. To entitle plaintiffs to this relief, they must establish a breach of the trust. So that whether the right of action is put on failure to comply with the statute, or on a breach of trust, the facts necessary to establish this right of action must be substantially the same. 1 Story's Eq. Jur. 507.

II. I come now to the only remaining question on the motion, and that is, whether the plaintiff is entitled to relief on the ground that the sale was void, that ground for relief not being set out in the pleadings.

The rule enforced under the former practice, that the complainant must recover, *secundum allegata et probata*, is still in force. If facts are not alleged, they cannot be proved; and if alleged and not proved, relief cannot be given. Now, in this case, the plaintiffs have alleged the sale of the judgment to Steward, and set out the transfer. These are proved. If these were all the facts necessary to relief, the plaintiff could recover. But the mere execution of the assignment was but one of the illegal and unauthorized acts of the receiver. He conveyed without a sale at public auction, and of course without giving fourteen days' notice of that sale. These are the *gravamena* of the right to maintain this action, and they are not alleged. The defendant could not anticipate that in an action

brought for relief on the ground of fraud he would be called upon to defend proceedings in another and different action which were alleged to be irregular and void.

The evidence as to the void proceedings is not offered or relied upon in support of the charge of fraud, but it is given as a distinct and independent ground of relief. The defendant has the right to insist that these facts shall be averred as well as proved, and, not having been averred, the proof must be held incompetent, and be rejected.

The motion for a nonsuit is therefore denied, on the ground that the plaintiffs are entitled to relief on the ground of fraud.

[The following is the opinion on the argument of the demurrer referred to above.]

MULLIN, J. Before proceeding to examine the grounds of demurrer, it is necessary to recall the proceedings in the cause, so as to ascertain whether defendant is at liberty to demur to the original complaint. After issue was joined upon the original complaint, the cause was referred, the plaintiff gave evidence, and rested, and then defendant moved for a nonsuit on two grounds :

1. That the only ground on which the plaintiff claimed to set aside the sale of the judgment by the receiver was fraud, and the fraud charged was not proved. 2. That the plaintiff was not entitled to relief on the ground that the order authorizing the receiver to sell was obtained *ex parte* without notice, and the sale was made privately, and not at public auction, because no such matters were alleged in the complaint.

The motion for a nonsuit was denied on the ground that there was some evidence of fraud in the sale of the judgment by the receiver to Steward. But it was held that the other matters, to wit: That the order was obtained *ex parte*, and without notice, and that the sale was private, and not at auction, could not be proved, not being alleged in the complaint.

The plaintiff then applied for leave to amend by inserting therein the several defects in the proceedings to obtain the order to sell, and in the sale itself, and an order was made permitting the complaint to be amended as moved for by the plaintiff; and it was provided by the same order that such amendment should be without prejudice to any proceedings had in said cause; that the defendant be at liberty to put in a new answer within twenty days after service of a copy of such order, or, if he should elect not to answer,

then the new matter should be deemed to be denied. The defendant did not answer, but demurred to the complaint as amended.

The grounds of demurrer are: 1. To the new matter introduced by way of amendment, that the court has not jurisdiction of the subject-matter of the action. 2. That upon the new ground introduced by way of amendment, the plaintiffs have not legal capacity to bring or maintain the action. 3. There is a defect of parties plaintiff. The receiver alone can sustain the action. 4. The complaint as amended contains several distinct causes of action which cannot be joined. 5. That the complaint as amended does not state facts sufficient to constitute a cause of action.

The question is not before me whether the defendant could, under the order allowing the amendment, demur to the complaint, as that order permitted the amendment, without prejudice to the proceedings had in the cause. I am to consider the questions raised by the demurrer, and by the demurrer only.

1. Has the court jurisdiction of the subject-matter of the action introduced by the amendment? The cause of action stated in the complaint before the amendment was the illegal sale of the judgment by the receiver. The illegality charged was that the sale was fraudulent, to which fraud the purchaser was a party. The amendment sets up two additional grounds upon which the sale was illegal, to wit: That the order authorizing the sale was improperly obtained, and that the sale was in violation of the statute regulating sales by receivers. The amendment does not change the cause of action, whether the sale was illegal on one or one hundred grounds. The cause of action is single, and is not changed by increasing grounds of illegality. I attempted to show in assigning my reasons why the matters introduced by way of amendment were material, and, if proved, would entitle the plaintiffs to relief; that the party injured by an illegal sale of his property might file his bill in equity, and the court would set aside or declare void decrees, judgments, orders, or sales entered or made in violation of a statute regulating such proceedings, if they were void, and not merely voidable.

But the complaint contains only a single cause of action; the defendant cannot demur to specific portions thereof or averments therein. He must demur to the whole complaint (Code, §§ 143, 147), or some one of the causes of action therein. The new matter inserted by way of amendment cannot be reached by demurrer to that part. The defendant must show that the court has not juris-

diction of the cause of action upon any of the grounds stated in the complaint. This he does not attempt to do.

2. That the plaintiff has not capacity to sue or sustain the action on the new matter inserted by amendment. The last branch of the answer to the first ground of demurrer disposes of this. The new matter cannot be demurred to alone; so long as there is any ground stated in the complaint that entitles plaintiffs to maintain the action, the demurrer will not lie.

If, by the statement that the plaintiffs have not capacity to sue or maintain the action, it is intended to assert that the receiver alone can maintain the action, it cannot be maintained. Part of the relief sought is to charge him with fraud in discharging the duties of his trust, to the end that he may be removed; must the plaintiff wait until the receiver will consent to commence such an action, in order to obtain such relief, or would any court require him to bring such an action ? He is very properly made a party defendant, and thus enabled to defend himself against the charge, if it is falsely made. I find no case in which it is held that an action will lie in favor of a person for whose benefit a receiver is appointed against such receiver and others to whom he has fraudulently transferred property belonging to him as such, or against him and debtors with whom he is colluding to defraud the parties for whose benefit he was appointed ; but I do find cases settling principles which authorize such an action.

In *Newland* v. *Champion*, 1 Vesey, Jr., 105, it was held that a creditor of a testator or intestate need not make any one a party to his action to recover a debt due, except the personal representatives. But if there are persons who have possessed the estate or debtors of the deceased, and there is any collusion between them and the representatives, they may, in equity, though not law, follow the assets, make them parties, and demand an account. But this can only be done in case of collusion. The same principle is asserted and cases cited in support of it, in *Utterson* v. *Mair*, 2 Vesey, Jr., 98, note (2) and upheld in *Doran* v. *Simpson*, 4 id. 651.

An executor is appointed by the testator, and derives his authority from the will, and must conform to its directions when directions for his guidance are contained in it. But when not so acting, he is acting under authority of law, and subject to the control of the surrogate or other tribunal, or officers charged with the care of the estates of deceased persons. The administrator derives all his

powers from the statute authorizing his appointment and prescribing his duties. He, too, is under the charge of the court. Both hold the property for the benefit of the creditors, legatees, and next of kin. While their powers are more extensive than those of a receiver, their duty is substantially the same. Misconduct that would justify the removal of the one would justify the removal of the other, and the necessity of protection of his *cestuis que trust*, if I may so call them, is just as great in the case of the one class of trustees as in that of the other.

If then fraud and collusion will justify an action by a creditor or the next of kin against the executor or administrator, and those who owe the estate or purchase its property, the same or similar fraud or collusion between a receiver and a debtor to the person whose property has been transferred to him, or who has purchased property sold by him as such receiver, should authorize a like remedy. If the meaning of the counsel is that other creditors should be joined as plaintiffs, the answer is, that it does not appear by the complaint (the only paper before me except the demurrer) that there is any other creditor for whose benefit the action is prosecuted.

3. That the receiver only can maintain the action. This position I have already considered and need not further discuss it.

4. That several causes of action are improperly united. This I have also considered and need not refer to it again.

5. That the complaint does not state facts sufficient to constitute a cause of action. This question was considered by me when the motion for a nonsuit was before me, and I thought, as I do now, that a cause of action is stated in the complaint, entitling the plaintiff to a judgment if he can prove the allegations contained in it.

The general rule undoubtedly is, that it is the duty of a party having a cause of action against a receiver, and desiring to sue him, to apply, before bringing the action, to the court for permission to sue him, and the court may, upon motion, set aside or stay the proceedings and punish the person bringing the action for contempt; but until the court interferes, the action is regular, and a judgment in it will be valid.

The question is not before me whether the action should be stayed; the complaint does not show that consent to sue was not obtained; on the contrary, the presumption is that it was, if that was necessary to permit it to be brought.

*Judgment affirmed.*