TIERNAN *against* WILSON and others.

The Sheriff, under an execution, ought not to sell, at one time, more of the defendant's property than, in the exercise of a sound judgment, would appear to be sufficient to satisfy the demand, if the part selected for sale can be conveniently and reasonably detached from the rest, and sold separately.

Where, on an execution for ten dollars and twenty-five cents, the Sheriff sold two lots, containing together 446 acres, a moiety of which belonged to the defendant, and was worth above 800 dollars, for the sum of *thirteen* dollars, the sale was set aside as fraudulent and void.

And though there was no actual corruption or intentional fraud on the part of the Sheriff, yet, being guilty of very gross negligence and abuse of his trust, he was decreed to pay *costs*.

THE bill stated, that the plaintiff, an inhabitant of the state of *Maryland*, being seised, as a tenant in common, of certain lands in this state, appointed *M.* as his attorney, to take care of the land, and prevent trespasses, &c. and *M.* brought an action of trespass in the Court of C. P., of *Alleghany* county, in the name of the plaintiff, against one *Lilby;* but the other tenants in common, not being made plaintiffs, the attorney of the plaintiff, afterwards, suffered a judgment of *non pros.* to be recovered against the plaintiff, for 10 dollars, and 25 cents, costs. That the plaintiff, being expected to be in *Alleghany* in *July*, his attorney did not pay the defendant's attorney the costs. That an execution was issued by *Samuel S. Haight*, the defendant's attorney, on the judgment, and the defendant, *Joseph Wilson*, as deputy Sheriff of *Alleghany*, advertised for sale, under the execution, two lots of land, in the village of *Angelica*, viz.—lot No. 1, containing 209 acres and a half; and lot No. 2, containing 236 acres and a half; and, on the 7th of *August*, the deputy Sheriff put up at

auction, the two lots for sale together, in a body, and the whole, being 446 acres, were struck off to the defendant, *David A. Miller*, for the sum of *thirteen* dollars; and, by direction of *Miller*, the Sheriff conveyed all the right, title, and interest of the plaintiff in the lots, to the defendant, *Henry Gale*. The bill stated, that neither the plaintiff nor his attorney knew of the sale at the time; that the arrival of the plaintiff in the county was known to *Haight* and the deputy; and that they, and the defendant, *Miller*, well knew that the land sold was worth, at least, eight dollars per acre; and the bill charged, that the sale was collusive and fraudulent. That the plaintiff, as soon as the sale was discovered, offered *H. G.* to reimburse all the moneys he had paid, and all reasonable costs and expenses, if he would give up the purchase, which he refused; and, afterwards, to avoid the expense of litigation, the plaintiff offered to pay him one hundred dollars, if he would release the land, which he refused. The bill further charged, that the defendants, or one of them, at the Sheriff's sale, falsely represented that the two lots contained only 300 acres, and was subject to a heavy mortgage, when it was known, that the quantity of land was much greater, and that the only mortgage on the land, long before, had been satisfied of record, and there were no encumbrances upon it, &c. Prayer, for a discovery, and relief.

The defendants, in their answers, denied all collusion and fraud in the sale. They stated, that they had a general impression that there was a large mortgage on the plaintiff's property. The defendant, *Wilson*, said, that on searching the records to find a description of the land, by which to draw up the advertisement, &c. he found a mortgage of about 43,000 dollars; and that, at the time, he did not know that it had been satisfied. He said the sale was public, fair, and *bona fide*. The defendant, *M.*, said, that when he purchased, he supposed that the land was subject to a heavy mortgage.

*August* 29*th.*  The cause was brought to a hearing on the pleadings and proofs.

*Henry,* for the plaintiff.  He cited 8 *Johns. Rep.* 334. 14 *Johns. Rep.* 352.  18 *Johns. Rep.* 362.  1 *Johns. Ch. Rep.* 502.  3 *P. Wms.* 347.  1 *Vesey,* jr. 294.  2 *Bro. P. C.* 407.  2 *Atk.* 112.  *Noy's Rep.* 59.

*S. M. Hopkins,* contra.

THE CHANCELLOR.  The sale of the interest of the plaintiff in the two lots, was, under the circumstances, an abuse of trust, and ought not to be sustained.

The execution was for the sum of 10 dollars and 25 cents, and the defendant, *Wilson,* as deputy Sheriff under that execution, advertises and sells, in one parcel, and at one time, the plaintiff's interest, being, (as sold, though in fact it was more,) one equal undivided moiety of lots No. 1, and 2, the one containing 209½ acres, and the other 236½ acres of land.  The plaintiff had an interest sold equal to the entire ownership of 223 acres, and which, at the lowest cash valuation, 3 dollars and 50 cents an acre, amounted to 780 dollars and 50 cents.  Such a sale carries an abuse on the very face of it, and leads to the most oppressive speculation.  In this case, the interest of the plaintiff to the extent of a moiety of these lots was sold for 13 dollars. Any ten acres taken from any corner of either of these lots, would probably have raised the amount of the execution. The very circumstance of advertising and selling the whole supposed interest of the plaintiff, in both lots together, and for so small a demand, was calculated to excite distrust as to the title, and to destroy the value of the sale. It was a perversion of the spirit and policy of the power with which the Sheriff was intrusted.  It is difficult to define precisely the extent of property that a Sheriff may sell together, in mass.  There must be a sound discretion

exercised by the officer, and each case will furnish a rule applicable to it, under all its circumstances. It is sufficient to say, that here is a case, in which the abuse of discretion is too flagrant to be endured, and that the law will adjudge such a sale, in such a case, fraudulent. No person can hesitate for a moment to say, that the Sheriff ought not to have sold more than the interest of the plaintiff in one lot, at one time, and in one parcel; and I believe every one will be ready to conclude, that the sale of one lot would have raised the 10 dollars, with equal facility as the sale together of both lots.

*A Sheriff ought not sell more of the defendant's property, than necessary to satisfy the demand.*

The proposition is not to be disputed, that a Sheriff ought not to sell, at one time, more of the defendant's property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property, and sold separately. The justice of this rule is self-evident. As long ago as the case of *Wordye* v. *Baily*, (*Noy*, 59.) *Gawdy*, J. said, and the rest of the Court agreed with him, that if the Sheriff, upon a *fi. fa.* for 40 shillings, takes five oxen, each of the value of five pounds, and sells them all, the defendant may have an action of trespass against him. In addition to what has been repeatedly said in our own Courts, (8 *Johns. Rep.* 333. 18 *Johns. Rep.* 362. 1 *Johns. Ch. Rep.* 502.) I would refer to the case of *Executors of Stead* v. *Course*, (4 *Cranch*, 403.) in which the Supreme Court of the *United States* held, that if the collector sell a whole tract of land, when a small parcel of it would be sufficient, for taxes, he exceeds his authority, and a plea by the purchaser to a bill to set aside the sale was not to be sustained. It was the case of a sale in *Georgia*, under a law directing the collector to sell only so much land as was necessary to pay the taxes in arrear. The rule must be the same, without any positive law for the purpose. It rests on principles of obvious policy and universal justice.

*A collector of taxes ought not to sell more land than is necessary to pay the tax.*

I shall, accordingly, set aside the sale as fraudulent and void in law. I did think, at first, that I ought not to visit the defendant, *W.*, with costs, as I am not satisfied that, in the manner in which he conducted the sale, he committed an act of intentional fraud. But he was guilty of gross negligence in the execution of his trust. What reasonable pretence had he to set up two lots together, to raise so small a sum as 10 dollars? Why not make the experiment upon one lot? Will it be said, that he thought the lots were encumbered by a mortgage. He says, in his answer, that he had a general impression, or information, that there was a mortgage for a large amount upon the lands, but he had heard that the same was satisfied, though he says he cannot recollect whether he heard it before or after the sale. There had been a mortgage to a large amount, and *W.* went and took the description of the land from the registry of that mortgage, in the summer of 1819; but that very mortgage had been satisfied, and the certificate of discharge filed and recorded in the preceding year. He ought to have ascertained that fact, when he inspected the mortgage upon record, for the description of the land; and it would seem to have been very difficult, at the time of that inspection, to have avoided the discovery of the satisfaction of the mortgage, as it was probably almost under his eye. *W.* has said, that he sold subject to the mortgage, but witnesses present at the sale did not hear any mention made of the mortgage, and *W.* admits that he did not know that he mentioned it himself. It is said by one witness, that *W.* was asked if the title was good, and he replied, that if there was any encumbrance upon the land he knew nothing of it.

There was, then, no excuse for such an outrageous breach of duty, as setting up the interest of the plaintiff in two distinct lots, that is, his moiety of 209½ acres in one lot, and his moiety of 236½ acres in the other lot, and exposing that whole interest, (which, at the lowest calculation,

was worth nearly 800 dollars,) in one parcel, and upon one bid, to raise so small a sum as 10 dollars and 50 cents. Though there was no actual corruption on his part, yet such a gross act of negligence and abuse of trust must be attended with the payment of costs. There are many cases in which trustees, though not guilty of corruption, yet, being guilty of gross negligence, have been decreed to pay costs for their misbehaviour in the discharge of their trust. (*Fawkes* v. *Pratt*, 1 *P. Wms.* 593. *East* v. *Ryal*, 2 *P. Wms.* 284. *Loyd* v. *Spillet*, 3 *P. Wms.* 347. *Dawson* v. *Parrot*, 3 *Bro.* 236.)

The defendant, *Gale*, has suffered the bill to be taken *pro confesso*, but there is no charge of fraud as against him, and he was a stranger to the proceeding. There is no ground to make him pay costs, but he is not entitled to any protection in his purchase. The notice to *Miller*, his agent, of the circumstances of the sale, was constructive notice to him, so as to affect his title.

Nor can the defendant, *M.*, be charged with fraud. He attended a public auction, for the purpose of speculation, and exercised no other rights than those belonging to every bidder. There is no sufficient evidence of any fraudulent combination between him and the Sheriff, though he undoubtedly purchased at his peril, and with a knowledge of all the circumstances that could affect the validity of the sale.

I shall, accordingly, decree, that the sale be set aside as void, and that the defendant, *G.*, deliver up the deed to be cancelled, and release his right and title, under the sale, to the plaintiff, with covenants against his own acts ; and that the defendant, *W.*, pay to the plaintiff his costs of this suit, arising upon the defence made by *W.*

