# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

## OCTOBER TERM, 1841.

---

JOHN PENN and others v. WILLIAM CRAIG and others.

It is the duty of a sheriff to sell property plainly divisible in separate parcels. Yet where a sale is made in violation of this rule, if made with the approbation of the owner of the property, and if thirteen years have elapsed since the sale, and the property has descended to the heirs of the purchaser, the court will not for this cause alone disturb the title.

THIS bill was filed to set aside a sheriff's sale. The grounds relied upon to invalidate the sale, appear in the opinion of the chancellor. The cause was heard upon the pleadings and proofs.

*Vroom,* for complainants.

*Hamilton,* for defendants.

THE CHANCELLOR. This bill seeks to set aside two sales of the same property made by two sheriffs of the county of Warren. The property in both instances was purchased by the same per-

son, and the object of the suit must fail unless both sales are declared to be void.

William Craig, one of the defendants, was the owner of several distinct parcels of property in the county of Warren, and on the 25th of September, 1821, mortgaged a part of them to James Bryan, to secure one thousand dollars. This was the first incumbrance. Afterwards, and on the 19th of August, 1826, being indebted to the complainants, he confessed to them a judgment in the supreme court of this state for four thousand nine hundred and twenty-four dollars, besides costs. Upon this judgment a *fieri facias de bonis et terris* was issued to the sheriff of Warren, returnable to the term of September after the date of such judgment, to raise one thousand nine hundred and eighty-five dollars and sixty cents, with interest from the 23d of April, 1825, that being the real sum due, with five dollars costs. Under this execution the sheriff levied on the same property contained in the Bryan mortgage, and upon another farm at the Oxford meeting-house, already incumbered to its value. At a later day, and on the 5th of April, 1828, Bryan obtained a decree in this court for a sale of the premises contained in his mortgage, to raise eleven hundred and six dollars and twenty-seven cents, besides costs, and placed the execution also in the hands of the sheriff of Warren. The execution issued upon the decree in this court, though later than the one issued at law on the complainant's judgment, being upon a mortgage made prior to the judgment, took precedence, and was entitled to be first paid from the sale of the property. The sale on the execution out of this court was made on the 1st of August, 1828, by sheriff Shipman, and John Craig, the father of William, the mortgagor, became the purchaser of all the property contained in the mortgage, for twelve hundred and fifty dollars. On the 2d of May, 1829, sheriff Mushback sold the same property over again, on the execution issued by the complainants on their judgment at law, and John Craig again became the purchaser for the nominal sum of seven dollars. Both these sales are attempted to be impeached by the complainant, as fraudulent and

irregular, and constitute the subjects for inquiry and decision in this cause. The sales are distinct and independent in their character, were made at different times, under different executions, and by different sheriffs, and must of course receive separate consideration.

And first, as to the sale by sheriff Shipman, under the execution from this court. Among all the reasons urged against this sale, there is only one which appears to me to have much weight in it, and that is, that the sheriff sold the property in lump, when he should have sold it in parcels. The property consisted of a tavern-house and two lots in Belvidere, and a farm within a mile or two of that place of ninety or one hundred acres. The two lots in Belvidere, though the evidence is not very clear, I believe lay together, and might with propriety be embraced in the same sale. It is selling the tavern-house and the farm at the same time, that constitutes the objection. The duty of a sheriff to sell property capable of a natural division in separate parcels, is so obvious, that we should suppose no officer desirous of discharging his trust faithfully would ever fail to do so, and yet it is a very frequent ground of complaint. If plainly divisible, the property should be sold in parcels. This is the view taken in the case of *Merwin et al.* v. *Smith et al.* in this court, and it will be found to be in accordance with the cases of *Woods* v. *Monell,* in 1 *Johns. Ch.* 502, and of *Tiernan* v. *Wilson,* in 6 *Johns. Ch.* 411. So decidedly correct is this course considered in the state of New-York, that the provision is incorporated in the revised statutes, that real estate shall be sold in separate parcels if required by the owner: 4 *Kent's Com.* 431. The great object in regulating judicial sales, is to make the property bring the largest amount. This is desirable for all the parties, as well for the plaintiff as the defendant. To sell at one time, and in one parcel, different parcels of property which have no connexion with each other, is to do away with all competition and strife at the sale, and to afford the most favorable opportunities to speculate on the misfortunes of the defendant in execution. The practice, therefore, of selling in one parcel, property which is

64

separate, should be frowned upon and discountenanced as unjust and oppressive.

But while I state this as a general rule, and would desire that it might be adopted by sheriffs generally, it by no means follows that every sale not thus made will be set aside. There may be sound reasons for selling property together; one part may not be capable of advantageous use without the other; the defendant may himself desire to have his property thus sold; or the time since the sale was made may have so long passed by, as to render it in the highest degree indiscreet to disturb it. In the present case the property was entirely separate, and I think the sheriff should have sold the tavern-house and farm in distinct parcels. Had application been promptly made to the court, it is most probable a resale would have been ordered. Now, thirteen years have passed since the sale was made, the purchaser is dead, the land has descended to his heirs, been divided among them by commissioners, and in one instance, if not more, the share of one of the heirs has been sold. It is true that the filing of the bill is notice to all parties, and may therefore, in a technical sense, remove this difficulty, and yet unless other cause existed the reluctance would be very great to interfere for this alone. This property had been set up at a previous day, both in parcels and together, and no bid could be got, and the property was sold together by the consent and desire of the owner. The sheriff declares that the sale was fairly made, and there is no evidence that the purchaser exercised any control over the course of the sale. The purchaser, it is true, was the father of the defendant in execution, but there is nothing in that fact, *per se*, to affect the sale. He may buy, as well as a stranger, and at a public open sale I see no impropriety in his doing so. It would be a harsh rule that would shut out a father from purchasing the farm on which his son resided, and letting the family remain upon it. Every thing depends upon the *bona fides* of the transaction. That the father furnished the money and paid for his purchase from his own means, there can be no doubt. A part of it was money he received as a pension for military services, and a part

on his own note discounted at the Easton bank. The president of that bank declares, that he paid about the time of the purchase this money to the purchaser, and the amount was sufficient for that purpose. The deed was made to the father, and the property, at his death, descended to his heirs. There is reason, from the evidence, to believe that William Craig expected his father would have given him the property again, upon being paid what he advanced for it, but there is no evidence that the father ever promised to do so, and the result has shown that he suffered it to go to his heirs generally.

That the property sold at a low rate there is no doubt, and possibly, had the complainants been represented as they should have been at the sale, they might have saved their debt in part, if not in whole; and yet it is matter of great doubt whether, circumstanced as things were in the absence of the complainants, the property would have brought any more if sold in parcels. One very respectable witness has expressed his opinion, that the property brought all that it would have brought at that time at any sale. However this may be, there is nothing in the price at which the property sold to justify my interference on that ground.

The sale was first advertised at Belvidere, and from there adjourned by the sheriff to Oxford, and it is objected that this was illegal: that the power given the sheriff to adjourn a sale applies only to the time, and not to the place of sale. No such distinction is taken in the statute, and I confess I can see no good reason why, if he may change the time, he may not change the place of sale also. The sheriff has a discretion on this subject, and should be left free to exercise it. There may arise abundant cause for making a change. In this case the sheriff had failed to get a bid at Belvidere, and fearing William Craig was exerting there an undue influence, he went to Oxford. This was a public place, and where sales had frequently been made. He advertised the adjournment in the papers, and I cannot say the proceeding was either contrary to law, or an unwise exercise of discretion.

[Penn et al. v. Craig et al.]

While, therefore, I adhere to the opinion that a sheriff should sell in parcels property plainly divisible, and should have so done in this case, yet as this is the only ground for impeaching the sale, as it was done with the approbation of the owner of the property, and as so long a time has now elapsed, and the property has descended to the heirs of the purchaser, I deem it unwise to disturb this title. I fear I should be doing greater injustice by such a course, than by allowing the sale to remain. The value of the property has increased, from the evidence of Mr. Mackey, very considerably, and it may possibly have undergone more or less changes in other respects.

With the second sale, made on the execution at law by sheriff Mushback, I have little or no difficulty. It was made under the execution issued by the complainants themselves on their judgment, and the whole proceeding was under their own control. The sale appears to have been fairly made, and upon the proper and legal notice. The property was sold in parcels, and I do not find any irregularity whatever stated or proved. The sheriff stated that he sold by order of the plaintiffs' attorney, and showed a letter from him as his authority. The plaintiffs' attorney declares his conviction that he never could have given instructions for selling this property over again, but frankly avows that he does not remember the directions he gave the sheriff. From the circumstances, I am strongly inclined to think that the sheriff has not carefully looked into his instructions, for it was the policy of the plaintiffs not to sell the property a second time, and it is reasonable to suppose the plaintiffs' attorney so acted. But the sale did take place, made by a sheriff under a valid execution, and how can it be disturbed? He declared at the time that he sold by orders from the plaintiffs' attorney, and the attorney cannot himself say what the instructions were that he gave. Too much time has rolled over this transaction to trust to mere recollections. Suppose the complainants had attended this sale and bought, they must have been entitled to all the right to the property remaining in William Craig. The case is not varied

[Penn et al. v. Craig et al.]

by John Craig becoming the purchaser. He had as much right to take the title as a stranger.

Upon the whole case, I am of opinion that the complainants are not entitled to a decree in their favor, and that the bill must be dismissed, but without costs. William Craig is the only defendant who has answered, and I do not think he should recover costs at the hands of these complainants.

Bill dismissed without costs.