FELIX H. MAYS and Wife *v.* ELISHA C. WHERRY and others.

## October Term, 1875.

CHANCERY JURISDICTION TO SET ASIDE SATISFACTION OF A JUDGMENT — EFFECT. — Equity has jurisdiction to set aside the satisfaction of a judgment where the satisfaction was had by the sale of land thereunder, and the sale was afterwards judicially declared to be void because the sheriff sold the property, and other realty also levied on, in block; the effect of which, under the statute, will be to revive the judgment, not the levy of the execution on which the void sale was made.

ESTOPPEL IN PAIS — WHAT IS NOT. — Mere knowledge by the owner of land that the purchaser at a void execution sale has sold to a third person, and silence, without any declaration or act, with knowledge of his rights, intended to influence, and actually influencing, the conduct of the other parties, will not estop the owner to assert his rights.

LIS PENDENS — BILL TO SET ASIDE SATISFACTION OF JUDGMENT AND SELL LAND. — The pendency of the bill of a creditor to set aside the satisfaction

of his judgment by a sale of land, and to subject the same land by the decree, will give the complainant a lien superior .to that of a subsequent judgment creditor of the common debtor, although the land may have been previously sold and conveyed under the execution of a third creditor.

*Hicks & Helms,* for complainants.
*R. Ewing,* for Wherry and Carsey.
*M. C. Goodlett,* for Spence.

THE CHANCELLOR : — On January 12, 1865, Thomas F. McNish sold to the defendant E. C. Wherry a tract of land in Davidson County, consisting of seven acres and sixteen poles, for $2,500, in three equal instalments, payable January 1, 1866, 1867, and 1868. McNish conveyed to Wherry the land by deed duly proved and registered, retaining a lien on its face for the payment of the notes. The defendant paid the first of these notes, and made payments on the other two, after which McNish assigned the latter notes to the complainant Elizabeth L. Mays, then Elizabeth L. Owen, and a widow. The said Elizabeth L. Owen brought separate suits on these notes, and on June 11, 1868, recovered thereon two judgments, in the Circuit Court of Davidson County, against the defendant Wherry, — one for $976.16 and costs, the other for $797.36 and costs. On July 18, 1868, executions issued on these judgments, and were, on August 23, 1868, levied on the land just mentioned, and on a lot in Edgefield, and returned "levied too late to sell." Writs of *venditioni exponas* afterwards issued, under which, on November 21, 1868, the sheriff sold both pieces of realty together, instead of separately, to the complainant Elizabeth L., at the price of $1,843.07, — that being the full amount due upon the judgments, with interest and costs, — and the writs were returned satisfied accordingly. On July 13, 1869, the sheriff executed to the complainant a deed, in pursuance of the terms of sale, which was duly proved and registered.

On October 16, 1870, the complainants intermarried, and shortly afterwards took possession of the tract of land ; and,

on April 21, 1871, sold and conveyed it to R. B. C. Spence, for $1,100 cash, out of which they paid the taxes on the land then unpaid. The defendant Wherry knew, he says, of this sale at the time. Spence has been in possession of the property since that time.

In the meantime the complainants brought an action of ejectment at law against the defendant Wherry, to recover the possession of the lot in Edgefield. At the trial, the circuit judge charged the jury that the sale by the sheriff, under the levies as aforesaid, of the two pieces of realty together, was fraudulent in law, and void, and a verdict was rendered in favor of the defendant. The judgment entered up on this verdict was, upon appeal to the Supreme Court, affirmed. The date of affirmance nowhere appears in this record, nor the date of the commencement of the action of ejectment. On September 17, 1873, Smith and Baxter sued the defendant Wherry before a justice of the peace, and, on September 29, 1873, recovered a judgment against him for $150 and costs. On May 12, 1874, execution issued on this judgment, and was levied on the Edgefield lot in controversy, and the papers were returned into the Circuit Court for the purpose of having the land condemned. The land was condemned, a *venditioni exponas* issued, and, on December 19, 1874, the land was sold under the writ, to the plaintiffs in the execution, at the amount of their debt, interest, and costs. These plaintiffs, Smith and Baxter, seem to have taken a deed at once from the sheriff, and brought their action of ejectment to the January term, 1875, of the Circuit Court, against the tenants in possession, and obtained a judgment by default, and were perhaps put in possession, though this fact is not established by any proof. On February 19, 1875, the defendant Wherry confessed a judgment in favor of the defendant J. M. Carsey, who is the father of Wherry's wife, for $645; and on March 1, 1875, Carsey redeemed the Edgefield lot from Smith and Baxter, took a deed, and is now in possession thereof.

The original bill was filed on January 16, 1875, by Mays; and wife against Wherry alone, and, although sworn to, states that the action of ejectment was for both pieces of realty, and the invalidity of the sale adjudged as to both. The answer and cross-bill of Wherry, also sworn to, concedes the facts in this regard to be as charged in the bill. The answer to the cross-bill, and the amended and supplemental bill, filed July 9, 1875, correct the error. The latter bill is against Wherry, Carsey, and Spence. The defendants answer, and Spence files her answer as a cross-bill against Mays and wife, and Wherry, all of whom answer. The record discloses the facts herein before recited, although each party might object that some of the details are not shown by the best evidence, or even by competent evidence as against him or her.

The object of the original bill was to set aside the satisfaction of the complainants' judgments, by reason of the void sale, and to have the land in the country sold under the vendor's lien reserved by the McNish deed, and the lot in Edgefield subjected by sale to any unsatisfied balance of the judgments. The amended and supplemental bill charges, in addition, that the judgment by confession in favor of Carsey, and his subsequent redemption of the land by virtue thereof, were parts of a fraudulent scheme or device between the said Wherry and Carsey to hinder and delay the creditors of the former, and especially the complainants, in the collection of their debts.

No effort has been made to controvert the right of the complainants to have the satisfaction of their judgments set aside and the judgments revived. The doubt expressed by our Supreme Court, in *Kimbrough* v. *Benton*, 3 Humph. 110, 116, as to such right, without showing fraud or misconduct on the part of the defendant, has been overruled both by clear expression of legislative will to the contrary, and by judicial decision. By the act of 1848, ch. 191, the satisfaction might be set aside by the court which rendered

the judgment, where the property sold was recovered by a third person. And a failure of the plaintiff in the execution, as a purchaser of the property, to recover it in an action brought for the purpose, because the title was not in the execution debtor at the time of sale, was held to be within the equity of the statute. *Edde* v. *Cowan*, 1 Sneed, 290. This act was brought into the Code, secs. 2990–2993. By the act of 1850, ch. 119, the remedy was extended in favor of certain purchasers, and this provision was made general by the Code, sec. 2996, so as to embrace all purchasers at execution or master's sale of any property, real or personal; and the court is authorized, where the property is recovered from the purchaser " by the defendant, his heirs or representatives, or by third persons," upon *scire facias*, to set aside the satisfaction entered, and revive the judgment for the benefit of the purchaser. The fact that the purchaser is also the plaintiff in the execution can make no difference, if his conduct be not such as to repel him from court. In view of the legislation embodied in the act of 1848, the Supreme Court, in 1853, sustained the jurisdiction of equity to set aside the satisfaction of a judgment where the sale was void because the sheriff had neglected to give the tenant in possession notice of the time and place of sale, as required by statute. This decision was cited with approval, and repeated, in *Henry* v. *Keys*, 5 Sneed, 488. " If," say the court, " jurisdiction existed in equity before this act, as we incline to think it did, then the act did not take it away. At all events, we can see no reason now, since the act, to drive the creditor to a court of law." This was a mild way of intimating that the previously suggested doubt as to the jurisdiction of the court was without foundation. So, in *Smith* v. *Hinson*, 4 Heisk. 250, the satisfaction of a judgment was set aside in equity where the property sold had, by the procurement of the debtor, been previously conveyed by a third person to the debtor's children, with the fraudulent intent of hindering

and delaying the debtor's creditors. And in this case, after setting aside the satisfaction, the court proceeded to give the creditor relief by subjecting the property to his judgment. And the same thing was done in *Hoyal* v. *Bryson*, 6 Heisk. 139. And see *Anderson* v. *Lyons*, 2 Tenn. Ch. 61.

These decisions leave no doubt that where the sale under which satisfaction is entered has been declared void, either on account of the fault of the sheriff in conducting the sale or for a defect in the title to the property sold, equity has jurisdiction to set aside the satisfaction. The bill says that the court held the sale, because the two pieces of realty were sold together, "a gross fraud upon the defendant, and void." The defendant, in his answer, says that the circuit judge charged "that complainants' proceedings, through the sheriff, against respondent, were not only oppressive, but also grossly fraudulent, and void." There is no evidence, record or otherwise, on the point. Both agree, however, that the sale was declared to be "grossly fraudulent, and void." For the purposes of this suit, I must take it to have been so declared; and, in the absence of any evidence on the subject, that it was so declared because the sheriff made the sale in that mode. The law threw upon him the duty of conducting the sale, and it is incumbent upon the party seeking to implicate any other person in the wrong to furnish the necessary proof. *Tiernan* v. *Wilson*, 6 Johns. Ch. 411. The complainants are not estopped, by any thing appearing in this record, to come into this court to have the satisfaction set aside.

The sale was declared fraudulent and void in an action of ejectment for the Edgefield lot. The effect of the decision on the title to the land not embraced in the action of ejectment was not discussed. The complainants and their vendee, Spence, seemed inclined to insist upon the validity of the sale, while the defendant Wherry maintained, though not very vehemently, that it was void. I have not been furnished with the decision of the Supreme Court, and

·do not, consequently, know how far that court has gone. The inclination of that court in *Winters* v. *Burford*, 6 ·Coldw. 328, was, manifestly, to treat the sale as *per se* void ; not so much on authority, which certainly does not sustain that view, as upon the policy of our redemption laws. The point is material. For, if the sale be only voidable at the instance of the judgment debtor, the rights of intervening third parties before the sale is attacked would, if *bona fide* purchasers for value and without notice, be protected. The parties have not seen proper to furnish me with the opinion, or even the judgment, of the Supreme Court; so that I am unable to determine the pcint. The complainants and their debtor both agree, however, that the sale was declared void, and the defendant Spence does not deny the fact. For the purposes of this suit I shall treat the sale as void *ab initio*. See, now, *Mays* v. *Wherry*, 2 Baxt. 133.

In this view, the complainants, having acquired no title to the land, could communicate none to the defendant Spence. The latter, therefore, has no right to the property as against Wherry, unless it be on the doctrine of estoppel. The only proof on this point is the admission of Wherry, in his deposition, that he knew of the sale by complainants to defendant Spence at the time it was made. But mere knowledge and silence are not sufficient to make out an estoppel, — at any rate, under the circumstances of this case. There must be a declaration, or an act done with knowledge of his rights, by the party sought to be affected, which was intended to influence, and did in fact influence, the conduct of the other party. 1 Story's Eq. Jur., sec. 368 ; *Morris* v. *Moore*, 11 Humph. 433 ; *Decherd* v. *Blanton*, 3 Sneed, 373 ; *Dezell* v. *Odell*, 3 Hill, 219 ; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483 ; *Pickard* v. *Sears*, 6 Ad. & E. 469.

I am of opinion, therefore, that the defendant Wherry is entitled to treat the property as still his ; or, at his election, to ratify the sale to the defendant Spence. In the latter event, he will be credited with the $1,100 purchase-

money, as of April 21, 1871, less the taxes paid out of the same. In the former event, the property will be sold in satisfaction of the complainants' judgments, under the vendor's lien reserved in the McNish deed. The defendant Spence will account for the rent of the land since it has been in his possession, but will be allowed for improvements to the extent that they have permanently enhanced the value of the land, and taxes paid. She will also have a decree against the complainants for the purchase-money paid them, with interest, and be subrogated to the complainants' rights until she is paid.

The bill does not attack the title of Smith and Baxter to the lot in Edgefield. They are not made parties, and they are expressly exonerated from all charges of fraud. It is argued for the complainants that the setting aside of the satisfaction of the judgment restores the complainants to their rights under the original levies. They have not brought before the court the necessary parties to make this contest. Besides, the language of the Code does not allow of the construction contended for. Both sections 2990 and 2996 provide for setting aside the satisfaction and reviving the original judgment or decree, but not any previous execution or levy. Nothing can be revived except what the statute expressly allows. Such a revivor, moreover, cannot be allowed to affect rights acquired while the judgment was extinct.

But the *lis pendens* acquired by the filing of the bill clearly overrides the judgment of the defendant Carsey, and the rights secured by the redemption subsequently made. He holds the property in trust for the benefit of complainants, subject to a lien in his favor for the amount paid to Smith and Baxter in redemption, with interest. He is also entitled to require the complainants to go first upon the land in the country, they having a lien on both pieces, and he only a right on one of them.

Under the circumstances, the complainants will be charged with all costs.