HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS AND MARTIN P.
GREY, VICE-CHANCELLORS.

---

ROBERT LUNDY

*v.*

JULIA B. SEYMOUR.

Under a writ of *fieri facias*, issued upon a judgment three years after its re-
covery, a sheriff levied upon and advertised for sale, four distinct parcels of
land belonging to the defendant in execution, one of which alone, was of
sufficient value to have thrice paid the judgment and the other parcels were
of value more than enough to pay the judgment several times, and in ab-
sence of the defendant, who had no notice or knowledge of the intended

(1)

Lundy *v.* Seymour.

sale, he sold the four parcels in one lot to the attorney of the plaintiff in exe-
cution, for one-fourth the amount due upon the judgment, and thereupon the
attorney caused the sheriff's deed to be made to a third party, through whom
and another, the title to the whole property, subject to the inchoate dower
right of a wife of advanced years, now deceased, within four months and a
half after the sale, went to the attorney's wife, who, though she claims to be
an innocent purchaser for value, does not, by her answer, disclose the circum-
stances of her purchase or state the value she paid for the property, and who
appears to have dealt with the property since the sheriff's sale as though she
deemed the title of it to be subject to question.—*Held,* that a preliminary in-
junction will issue to restrain the attorney's wife from prosecuting an action
of ejectment against the defendant in execution, to recover possession of part
of the land, to the end that the *status quo* may be preserved until full proofs
and final hearing shall be had, upon bond being given under rule 126; and
this, though the complainant has delayed his application to this court for four-
teen years after he was put upon inquiry concerning the sale, it appearing that
during that time he suffered mental affliction which was more or less incapaci-
tating, and it failing to appear that the defendant in this suit will suffer preju-
dice at the hearing, or that the court will be embarrassed or obstructed in ad-
ministering justice, because of the delay.

On order to show cause why an injunction shall not issue to
restrain a suit in ejectment, heard on bill, answer and affidavits.

The defendant's husband was the attorney-at-law of one Ellen
Underwood, and, as such, for her, in March, 1879, recovered
judgment, in the Hudson county circuit court, for $372.72,
against the complainant. In December, 1881, in virtue of a
writ of *fieri facias,* issued upon that judgment, he caused the
sheriff of Hudson county to levy upon and sell four tracts of
land belonging to the complainant, all of which were situate in
the city of Jersey City, but were wholly distinct and separate
from each other. The first of them was a parcel upon which
was erected a dwelling-house, having a frontage of one hundred
feet on Central avenue and running back therefrom about one
hundred and eleven feet. The second was a vacant city lot
twenty-five feet wide and one hundred and twenty-five feet deep,
which fronted upon the side of Central avenue opposite to the
side of that avenue upon which the first tract fronted. The third
tract was about five and a half acres of vacant meadow land,
having a frontage on Tonnele avenue, and the fourth was a

Lundy v. Seymour.

single vacant lot upon Summit avenue, twenty-five feet wide and one hundred feet deep.

The complainant values the whole property at $26,000. The defendant, in her answer, says that at the time of the sale it was not worth more than $8,000, and was encumbered by municipal liens. The value placed upon the first parcel by the tax assessor was $2,500.

The property appears to have been unencumbered except by municipal liens for taxes, water rents and assessments. It does not appear what such liens upon the second, third and fourth tracts aggregated at the time of the sale, but it does appear that, upon the first parcel, with interest, they amounted to about $800.

The complainant did not know of the sale, and was not present when it took place, on the 16th of March, 1882, three years after the recovery of the judgment against him.

At the sale all four of the tracts of land were offered and sold together in one lot. Mr. Seymour bid for them $100 and they were struck down to him at that price. He signed the conditions of sale " R. B. Seymour, Atty." Subsequently he directed the sheriff to make a deed for the property to Charles H. Furst, and when the deed was delivered, on the 4th of April, 1882, he received it from the sheriff and, after paying the sheriff's execution fees and deducting their amount from the bid of $100, he receipted for the balance of the bid as the attorney of Ellen Underwood.

In the month of July following, Furst and his wife, by their deed, which recited that it was made in consideration of $3,000 paid to them by its grantee, conveyed the property to William B. Scott, of Kingston, New York, who, with his wife, on the 22d of the next month, August, 1882, made three deeds to the defendant in this suit, the wife of Mr. Seymour. By one of those deeds they conveyed to her the first parcel of land, reciting $2,000 consideration paid, and by another they conveyed to her the second and fourth parcels, reciting $2,600 consideration paid, and by the remaining deed they conveyed the third parcel, reciting $3,000 consideration paid. In the deeds thus made by Furst and Scott the only covenants are against encumbrances or impairment in title by the acts of the grantors.

In the spring of 1882 the complainant leased the first parcel of land, with the dwelling-house, to a man named Walker for $15 a month, and collected one month's rent. Later, by letter from Bradford, Pennsylvania, to which place he moved immediately after renting the property, he demanded of Walker further payments of rent and was informed that he was not entitled to them because a man named Seymour was the owner of the property. The exact date of this communication does not appear. From that time until May, 1887, the defendant collected the rents of the property but did not pay any taxes or assessments. She did pay the water rents, which annually amounted to $12.50, through the year 1886. In 1887 the complainant's wife took possession of the first tract and lived in the dwelling-house until her death in 1895. While in possession she erected a small store upon part of the property, which she rented for $10 a month, and permitted another store to be erected by a tenant upon another part of the property, for which she received $3 a month.

The complainant moved from Bradford, Pennsylvania, to Newark, New Jersey, in 1883, and resided there till 1889, when he moved to the city of Bayonne, New Jersey, and lived there till 1890, when he went to the State of Wisconsin and remained there till after his wife's death, when he returned to Jersey City and took possession of the first tract of the property.

It does not appear that anyone has been in possession of the second, third and fourth tracts or has exercised any ownership over them since 1882. Nor does it appear to what extent those tracts are or at the sale were encumbered by municipal liens. It is represented that from the time the complainant left Jersey City, in 1882, till within a few months, he has suffered from some mental and physical affliction which, to some extent, has incapacitated him from attending to his affairs, but upon the subject of this affliction the affidavits are so general and vague as to leave the character of the affliction in obscurity and render it a factor of doubtful and uncertain substance.

In July, 1896, Mrs. Seymour commenced an action of ejectment to recover possession of the first tract of land.

The complainant insists that the conveyances by Furst and Scott were voluntary and without consideration, and now asks that an injunction which will restrain the further prosecution of the ejectment suit pending the determination of this cause, the object of which is to set aside the sheriff's deed and the subsequent conveyances of Furst and Scott, do issue, or, treating the complainant as trustee of the property, to compel a conveyance of it by her to him upon equitable terms.

Mr. Seymour died before the ejectment suit was brought.

Mrs. Seymour claims to be an innocent purchaser for value, but fails in her answer to disclose the particulars of the transaction by which she acquired her title or the value that she gave for the property.

*Mr. Washington B. Williams*, for the complainant.

*Mr. Frank M. Hardenbrook*, for the defendant.

THE CHANCELLOR

If the assessor's valuation of the first parcel of land be taken as correct, and from it be deducted $800 for the municipal liens, the clear value of that land will appear to have been $1,700 at the time of the sale.   Taking the $2,500 from the $8,000, which the defendant admits the four parcels to have been worth in 1882, we have $5,500 as the value of the remaining three parcels, and if we subtract from that sum the same proportion of value for unpaid municipal liens as was taken from the value of the first parcel, say one-third, the clear value of the second, third and fourth parcels was $3,667, making the clear value of the whole land $5,367, or about fifty-four times as much as it was sold for at the sheriff's sale.   Or, in view of the fact that the defendant claims to be a purchaser from Scott for value, taking as the value of the land above encumbrances, the aggregate of the considerations recited in the three deeds to her, which deeds were delivered four months and a half after the sheriff's sale, the sum would be seventy-six times the price bid at the sheriff's sale.   Or taking the consideration mentioned in the deed

from Furst to Scott to be the value, it was thirty times the price bid at the sheriff's sale.

Whatever valuation is taken, it is .clear that there was a startling discrepancy between the price bid and the true value of the property. Upon the presentation of this circumstance, the mind naturally turns to ascertain the attitude of the parties concerned in the sale, when it was made, to find an explanation of the sacrifice. It finds that Mr. Lundy, though aware that he had been sued, had no knowledge of the sale; that the sale took place three years after the entry of the judgment; that after it, exhibiting an unconsciousness of his loss of title, Mr. Lundy leased the property and collected some rents. It further finds that the sheriff levied upon and sold four perfectly distinct and separate parcels of land in bulk, the first of which parcels was alone of sufficient value to pay the entire judgment more than three times, for about one-fourth the amount of the judgment, and that the attorney who represented the judgment creditor attended the sale and bid in the whole four tracts in one lot for that sum. The combination of circumstances affecting the sale, shortly stated, is this: A sale of four distinct parcels of land in one lot, one of which parcels was of more than sufficient value to have paid the judgment, for a price so grossly inadequate as to shock all sense of propriety and justice, to the attorney of the plaintiff in execution three years after the entry of the judgment, in the absence of the defendant in execution, who was unaware that his propeety was being sold.

The sheriff's conduct, in which the plaintiff's attorney appears to have, at least, acquiesced, remaining as it does unexplained, exhibits an abuse of the discretion which the law vested in him to determine the quantity of land necessary to be sold, and whether it should be sold in bulk or in parcels. The land being in detached, independent parcels, each of considerable value, clearly should have been sold in parcels. · *Johnson* v. *Garrett, 1 C. E. Gr. 31*; *Schilling* v. *Lintner, 16 Stew. Eq. 444*; *Holmes* v. *Steele, 1 Stew..Eq. 173*; *Tiernan* v. *Wilson, 6 Johns. Ch. 411.* In the last-cited case Chancellor Kent said: " The very circumstance of advertising and selling the whole supposed interest of

the plaintiff in both lots together and for so small a demand, was calculated to excite distrust as to the title and to destroy the value of the sale. It was a perversion of the spirit and policy of the power with which the sheriff was entrusted."

When the consequence of such an abuse of discretion is detrimental to the defendant in execution, equity will interfere as in the case of abuse of a trust. See cases above cited.

Here the inadequacy of the price bid for the land, shocking as it does the conscience, in itself is strong evidence of fraud, and when it is coupled with the now apparent abuse of the sheriff's discretion, the complainant's lack of knowledge of the sale, and his subsequent mental enfeeblement, and the subsequent devolution of the title to the property sold upon the wife of the attorney who participated in the unjust sale, and her hesitating assertion of her title, it becomes, I think, convincing evidence of fraud. *2 Pom. Eq. Jur.* § *927; 1 Story Eq. Jur. 256; Wintermute* v. *Snyder, 2 Gr. Ch. 489, 496; Gifford* v. *Thorn, 1 Stock. 702, 740; Weber* v. *Weitling, 3 C. E. Gr. 441; Kloepping* v. *Stellmacher, 6 C. E. Gr. 328; Phillips* v. *Pullen, 18 Stew. Eq. 836.* But to now, before full proofs, speak more conservatively, the situation savors, at least, strongly enough of fraud to induce this court to interfere by preliminary injunction and preserve the *status quo* until the facts shall be fully developed by those proofs, and final hearing.

It is true that the defendant insists that she is an innocent purchaser for value, but she does not disclose the particulars of her purchase and explain to a just satisfaction how the value she gave was paid or what it was. I think that it was incumbent upon her to do so. She was the wife of the attorney who acquiesced in the sale of the complainant's property, composed of several lots, in bulk, and who bid in the property when so sold for $100, and afterwards directed the sheriff to make the deed to Mr. Furst, and, when the deed was delivered, took it into his possession. She took her title through deeds in which neither Mr. Scott nor Mr. Furst covenanted against other encumbrances or defects of title than their own acts might have occasioned, which were executed within four and a half months

---

Lundy *v.* Seymour.

---

after the sheriff's sale. Besides, in 1887, after she had been in the possession of the property for five years without struggle, as if conscious that she had an untenable title, she surrendered her possession to the complainant's wife, who thereafter held it for eight years. The insufficiency of her excuse for this surrender, that the dower right of the complainant's wife had not been sold, is manifest when it is remembered that such right was inchoate and did not entitle Mrs. Lundy to possession. I think that the natural inference from her situation justifies the proposed issue of injunction, if for no other reason than the maintenance of the *status quo*, until full production of proofs and a final hearing can be had, and especially so when it is remembered that, under rule 126, she will be protected from damage by a bond.

The remaining objection to the issuance of the injunction is that the laches of the complainant disentitles him to the assistance of the court of equity. In *McCartin* v. *Traphagen, 16 Stew. Eq. 323, 338,* Vice-Chancellor Van Fleet said: "Great delay is a good bar in equity. Courts of equity have from the earliest times, upon general principles of their own, even where there was no analogous statutable bar, refused relief to stale demands. More than one hundred years ago Lord Camden said: 'A court of equity, which is never active in relief against conscience or the public convenience, has always refused its aid to stale demands where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth the activity of a court of equity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore from the beginning of this jurisdiction there was always a limitation to suits in equity.' *Smith* v. *Clay,* reported in a note to *Deloraine* v. *Browne, 3 Bro. C. C. 639.*"

But the neglect or delay which will induce the court to withhold relief is not mere lapse of time which does not amount to a bar by a statute of limitation. In the case last cited Vice-Chancellor Van Fleet continues in this language: "He who delays asserting his rights until the proofs respecting the trans-

action out of which he claims his rights arose, are so indeterminate and obscure that it is impossible for the court to see whether what seems to be justice to him is not injustice to his adversary, should be denied all relief, for by his laches he has deprived the court of the power of ascertaining with reasonable certainty what the truth is and thus of doing justice." So, in *Tynan* v. *Warren, 8 Dick. Ch. Rep. 321,* Vice-Chancellor Green said : " I do not understand that mere delay in bringing a suit will deprive the party of his remedy, unless such a neglect has so prejudiced the other party, by loss of testimony or means of proof or changed relations, that it would be unjust to now permit him to exercise his right." To the same effect are the cases of *Daggers* v. *Van Dyck, 10 Stew. Eq. 130; Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 384; Hall* v. *Otterson, 7 Dick. Ch. Rep. 535.*

In this case the complainant's delay in seeking his remedy in equity has been more than fourteen years. When his tenant wrote him that a man named Seymour owned the property, and that he would not pay the complainant more rent, if he was in the possession of his mental faculties, he was put upon an inquiry which would have disclosed the necessity of this suit. It appears that he was then in Pennsylvania suffering from some mental and physical affliction. What that affliction was does not appear. Whether it did, in fact, incapacitate him, is not shown, save by the opinions of affiants which are not supported by statements of facts. How long the affliction lasted is left obscure. If he possessed capacity to care for his property, his inattention to it has very much the appearance of an abandonment of it and a waiver of his remedy in equity. Indeed, upon the case, as he presents it, if it had been made to appear that the delay has been prejudicial to the defendant through change in position, loss of proof or other cause, or has obscured the path of the court so as to . leave it in uncertainty, I would hesitate to act. But I do not perceive that the delay has caused any substantial detriment. It is true that Mr. Seymour is dead, but the defendant does not claim that by his death she has lost evidence. Whatever value the defence of laches may have when

the proofs are fully developed for the final hearing, is not apparent now, and I do not think that merely because of the lapse of fourteen years since the sale, I should practically deny the complainant an opportunity to come into equity, by refusing the injunction he now seeks. I will grant the injunction upon the complainant paying the costs of the term lost in the ejectment suit, and giving bond with sufficient sureties, in the sum of $1,000, conditioned for the payment to the defendant of all such damages or costs as may be awarded to her, either at law or in this court, in case the decision shall be against the complainant.